We have two tax cases this morning. Mr. Redding, you are arguing both of them. The court is somewhat disposed to just give you a liberal amount of time on the front end and let you respond. And then the government would have at least an equal time to respond. So Mr. Redding, why don't you proceed. In that vein here, I would like to pretty much address Cradie and then distinguish what the difference is at Deegan. I think it would be easier to These cases actually address two separate grounds for refunds in each case, both of which the Court of Federal Claims dismissed for lack of jurisdiction under Section 7422H. The phrase attributable to, because as being attributable to partnership items, the phrase attributable to is also, I want to make a point of this, key to the merits of the 6621C penalty interest refund claim because it's used in that statute as well. However, for purposes of Section 6621C, there's a specific definition of how you determine what is attributable to a TMT, a tax motivated transaction, in the There is no similar place to look for a clear definition of the meaning of attributable to a partnership item for purposes of 7422H. And I think it gets a little confusing sometimes as we're briefing the cases and talking about them because the attributable to phrase actually may have completely different interpretations in the two statutes, or at least relatively different. Now you need to get around Kiener, and it's your argument to get around Kiener that it only addressed one of the two statute, statutory provisions. Not exactly, Your Honor. Well, tell me how you would address that. First, I would say that I agree with Chief Judge Hewitt of the Court of Claims, who recently did distinguish Kiener in one of the Son of Boss cases, pointing out that the Kiener opinion relied on the lower court's determination of certain concessions made by the petitioners in that case, which are not present in this case. And secondly, relied on dicta on a determination that all of the grounds in the FPAW, the Notice of Final Partnership Administrative Adjustments, are inseparable from each other. And because of that single position, it became unnecessary for the court ultimately to look at the application of the formula to determine what portion is attributable to. The court in Kiener treated the case as though there were only one ground for adjustment, sham. And that is certainly not the case here. The FPAWs are in the record. There are multiple grounds in the FPAW. And when you go to the definition of attributable to in the regulations to 6621C, Kiener addressed that attributable to as well. The phrase attributable to is not defined. Courts have therefore given it its plain meaning, due to, caused by, generated by. So Kiener didn't ignore this. If I may, Your Honor, Kiener did not ignore that. But what you're looking at in Kiener is its interpretation of attributable to relative to 7422H. It did not look at the statutory or the regulatory definition of how you determine attributable to for purposes of penalty interest. That's what I started out trying to explain to the court. Do they have different meanings? Absolutely, Your Honor. In the realm of 6621C, how you determine attributable to is mandated by the regulation, which has the weight of law. There is no similar interpretation in the regulations or the code anywhere of what attributable to a 7422H means. And there the court in Kiener did look to what that meaning is. Now we would disagree with it, and I think it is not the same. There should not be the same application here. And I think part of that in Kiener comes about because of looking at that case as being narrowly defined as the taxpayer challenging the sham determination. You still haven't told me why Kiener didn't address both of these provisions and thereby bind you. Kiener absolutely never looked at the regulation. It's not even referenced in the opinion. But it does reference both of the statutes. Yes, it does, Your Honor. It refers to both. The provisions relevant to this claim, namely 6229 and 6502, are found in the code. The claim cannot be considered a partnership item by definition. What's the regulatory language you're relying on? It's Treasury Reg. And this is for the definition of the term attributable as found in 6621C? Yes, Your Honor. And what's that precise language? It's in Treasury Regulation 621C. Can we find that record here? It is in the addendum to the Pratties' opening brief, Your Honor, page number 0102, Treasury Regulation 301 and 6621C. And those regulations were done in a question-and-answer format. The question there is Q5, how is the amount of a TMT, a tax-motivated transaction, under payment determined? A5, except as provided in A6 of this section, the amount of tax-motivated transactions determined in the following manner. And then it sets out a formula by which you interpret that. Now, the Fifth Circuit looked at that formula in Wiener and said, you take that formula and you apply it to the multiple grounds that are set out in the Notice of Final Partnership Administrative Adjustment. And when you do, because some of those grounds are not tax-motivated transactions, and some of the grounds are tax-motivated transactions, or would be, that when you apply the formula, you get a result that there is no portion solely attributable to the transaction. There's not explicit definitional language in this regulation. You're inferring, I take it, a definition based on the example. I refer to it as a definition, Your Honor, but it does say specifically how you make the determination of what is attributable to you. Now, doesn't the Schell case decided recently by this Court create a problem for that interpretation? Schell, it does, Your Honor. Again, we are in the process of filing a motion for re-hearing. Well, I understand, but let's assume for present purposes that we're bound to Schell. You may have corrected what I just said. As 26621C, Schell never addresses the issue. Schell doesn't go to that. Schell does go to the tax-motivated, not tax-motivated, it goes to the 7422H attributable to. So you say that, okay. Yeah, the 6621C definition is relative to the merits of how you determine what is attributable to. It is not part of 7422H attributable to a partnership item question. One is whether something is attributable to a partnership item for purposes of the jurisdictional statute. 6621C, you look at whether or not that tax liability was attributable to what's called a tax-motivated transaction. That may or may not even be a partnership item. And it's the determination of what portion of the liability is subject to that penalty interest that's determined under 6621C. They're two completely different issues, two completely, I think, definitions or interpretations of attributable to. One is mandated by regulation for 6621C. The courts have had to structure the interpretation of attributable to for purposes of 7422H. There is no specific statutory or regulatory guidance. Now you're talking about the penalty interest claim here primarily, right? Don't you have to show that the partnership transactions are not sham in order to win? That's not our claim. That's the reason the dismissal for lack of jurisdiction is wrong. Our claim on either issue does not require a determination of a partnership item. We are not seeking to prove the transactions were not sham. We ask the court to interpret and construe the settlement that was entered into, and if appropriate, look behind that to the death paw, to determine then whether or not or what portion of liability, if any, should be deemed to be attributable to a tax-motivated transaction, and determine whether the government properly did that after the partnership level proceedings were concluded. We're not asking for any review of a partnership item, which challenging sham would be. Well, here's what Shell says about... I mean, your contention, I take it, is that the death paw had numerous grounds for disallowing the deduction. Included among them was the sham point. Absolutely, yes. And that you therefore can't assume that the sham applies to the entire amount. That's your contention, right? Not exactly very close. I'm with you right up to the last part of the statement. The last part of the statement is it's not a question of assuming. It's that the regulation says you have to look at every one of the grounds and apply the formula. That's where I have a problem with understanding how Shell doesn't create a problem for you, and that is the language from Shell that I'm reading from on the last page. In addition, that the FPAAs listed sham transactions as one of several grounds for disallowing the partnership does not, as the taxpayer suggests, render the FPAAs less conclusive. Now, that seems to be saying that even though the FPAAs may have had multiple grounds, that that doesn't mean that you can't find sham based on the failure to challenge that aspect of the FPAA. Am I misreading, Shell? But you must equally then, if you're going to take that as everything in the FPAA being conclusive, you must equally then consider that every other ground is also a valid ground for adjustment. Well, but it goes on to say, Shell, that because the settlement agreement did not change the FPAA's findings, that the activities of these partnerships were sham transactions, the sham transaction issue was not converted into a non-partnership item, and the taxpayer's refund necessarily involved resolution of partnership items. Ergo, no jurisdiction for the court to file a claim. So why doesn't that apply equally to your situation? We've made no claim based upon a conversion to a non-partnership item. That's not relevant to our claim. No, but the factual situation looks very similar to me. The factual situation is similar, Your Honor. There's no question about that. And then the legal analysis of it looks as if, if applied in this case, it would bar the claim you're presenting. I believe that legal analysis is incorrect. Well, but we're assuming that Shell is binding on it. But our claim does not say, reconsider whether or not these transactions were sham. Our claim says, if you look at every one of those grounds, if the court wants to put it in terms of conclusive, fine. But then you have alternate grounds and inconsistent grounds in the FPAA that have to also be considered conclusive. But aren't all of those grounds relevant only to the partnership? Yes, Your Honor. Why isn't this a partnership issue? Right. I agree with you. So perhaps it doesn't matter, and I accept what you say, that they don't relate to a sham, but they do all relate to partnership issues. Yes, Your Honor. So why are they now suddenly something over which the Court of Federal Claims has jurisdiction vis-à-vis the individual partner? The court does not have jurisdiction to go in and consider the merits of each one of those. We agree. Why would the apportionment of the penalty among them be any less a partnership item? Because that's done at the partner level after the assessment is made. Why? The entire penalty you accept is attributable to errors made in the partnership level return. So the entire penalty is due to partnership issues. Why does how the penalty is attributed among a variety of partnership level errors have any bearing on the individual partner as opposed to being a partnership item? Because no determination was made as to which of those grounds were the basis for the settlement or the decision. And as such, if they are equally considered, given equal weight, then the formula is applied. Again, that formula would be relevant only to the partnership issue. I'm having trouble seeing which part of this is an individual partner item as opposed to a partnership issue. Best I can give you as an example on that, Your Honors. We just had a hearing in the Southern District of Texas in which it was established very clearly. Two of the AMPOR claimants in those refund cases, the government didn't assess 6621C penalty interest against them. The penalty interest assessment is a non-partnership item. It's a determination made after, for example, the tax court will hold, does hold, that it has no jurisdiction to determine 6621C penalty interest in a temporary proceeding. It may determine that there are two different adjustments at the partnership level and that perhaps one of them meets all of the definitions of a tax-motivated transaction and the other does not. But it will still not make a determination as to whether or not penalty interest applies. And that determination is made at the partner level. When you say it doesn't make a determination whether penalty interest applies, I mean, it does make a determination that it was a tax-motivated transaction for purposes of 6621, right? It would not say for purposes of 6621C. Well, it could even make a determination that it was a tax-motivated transaction. The decision, the 2001 decision, Judge Halpern's decision that's at issue in the Deegan case, expressly references 6621CA for a 5, I guess it is. That seems to be as explicit a reference both to 6621 and to the sham slash, what is it, sham and lacking economic substance requirement. It's made exactly that funny, isn't it? No, what it actually said is that the transactions, and by the way, that was a stipulated decision. That was language created by the government, not by the court. It was stipulated to by the Deegans among others. By default, yes, Your Honor. Well, but you're stuck with it. Yeah. They are subject to that decision. I don't challenge that. But what that decision says is the partnership transactions lacked economic substance. Right. As described or as that term is described in a code section that does refer to a TMT. But lack of economic substance alone is an independent ground. Sham, if you go back and review all the case history on sham, sham is generally defined as a transaction lacking economic substance and for which there is no profit or business motive. You can have a transaction where the form of the transaction is completely disregarded. And if you look at that decision in depth, what you find is they go on and say that a specific portion of the partnership debt lacked economic substance. And the adjustments to the ordinary income are correlative to the portion that could not have been allowed but for the alleged debt. So in a careful analysis of that decision, what they're really saying is that it lacks economic substance. But economic substance is not defined as a tax-motivated transaction. It is sham or fraud that is defined as a tax-motivated transaction. And nothing in that decision addresses that second element that says it doesn't say it's a sham transaction as defined in section so-and-so. It doesn't use the term sham anywhere in the decision. It says lack of economic substance. But it specifically cites 26621C3A5 which says a sham or fraudulent transaction. As used in that section or as defined in that section. And my point is that it is an element of sham. It's referring to that section to discuss what economic substance, lack of economic substance is. But it doesn't say that the transaction lacked both elements. It doesn't say, you know, if it meant to say sham, it could have said sham. If we were to interpret the reference to 6621 as being a stipulated decision that this was a tax-motivated strategy, i.e. a sham, then where are you? I'm dead. If the tax court specifically attributed, I'm dead except for our argument that that stipulation should not be binding. But assuming it is and we go to there. No, I mean if the tax court had determined and said the transactions are shams. I go back to Copeland in the Fifth Circuit where the IRS assessed 6621C interest after the TEFR proceedings had concluded based on a decision of the court. In which the court held that the transactions were disallowed under section 162 because of lack of profit motive as that determination was made in 183. Well, a tax-motivated transaction includes a transaction disallowed under 183. But as the court noted, this transaction was disallowed under section 162 which has its own profit motive requirement. And the form of the test came from 183. But it wasn't a disallowance under 183. In fact, 183 doesn't apply to partnerships. I wanted to, and maybe the same thing you're looking for, I don't know. But to move you on to the difference between the Pratty and the Deegan situation. And in particular, whether or not we have a comprehensive settlement agreement here. Your Honor, I believe we do have a, well, in Deegan there was no settlement agreement. What we have is the settlement included in the stipulated decision. Well, that's the difference between Pratty and Deegan, yes. For the government at this point to be saying it wasn't comprehensive is virtually fraud. They've lied to the court. They've lied to the tax court. They told the partners up front that if they settled, it would resolve their matters. There would be no further litigation. There would be no further penalties. They filed notices with the tax court. The partners were no longer parties to the proceedings. The intent of the parties in that contract, in that settlement, was that it be a comprehensive settlement. Now, the courts may set, may relieve them from that. But, frankly, I think it's outright fraud on the court to be contending they were not comprehensive settlements. But, again, doesn't Schell address exactly that question in the context similar to the settled partners in this case? It does, and it just disregards all of the evidence with regard to I'm sorry, I missed what you said. It does, but it just disregards all of the evidence with regard to the entire parties. But, again, your argument was that Schell is wrong on this. That's not that Schell is distinguishable. I think Schell on that, and I'd have to look at it carefully to see if there's a way to distinguish it. But, in general, I think I agree with your interpretation at this point, and I think it's just patently wrong. Okay. The other thing about Schell is it addressed a question that wasn't the issue before the court or that wasn't the refund claim brought by the taxpayer. Similar to what happens here. The government's recast our claim as saying we're challenging Schell. In Schell, the government recasts our claim and says we want to reclaim the deduction originally disallowed. Let me see if I understand. I'm sorry, go ahead. I'm sorry, but that's not what our claim was. Our claim was that the taxpayer 10 years later had basis in that same partnership for which he incurred a loss. And it doesn't depend on that first-year transaction at all. It's all income reported in subsequent years. And yet the court says, nope, you can't take your loss. Let me see if I understand what you would envision would go on in the Court of Federal Claims if you're right on the 6621C part of this case. 66? 26. 6621C. I find the 62s and the 66s very easy to get mixed up. What do you see the Court of Federal Claims being required to decide if the issue of sham was not resolved at the tax court level, either through the settlement or through the disposition? In practice, I would say that it should first look to see if the settlement was comprehensive. If it determines it is not comprehensive, then you go to looking at did the FPAW establish on its own, if all of the grounds are given equal weight, that 6621C applies. Not review them, not reconsider them, giving all of them equal weight on all of the grounds supportive of tax-motivated transactions. If not, when you apply the formula just as they did in Wiener, the result is that the ground that the partnership was not engaged in the trade or business performing, the ground that the deduction was disallowed specifically under Section 162 are independent grounds. When you work that through the formula, the formula indicates that no portion of the liability is attributable to a tax-motivated transaction. Had the settlements said that the transactions were agreed to be shams, we would have no case. They didn't. There is absolutely no way to determine that anybody ever conceded that these transactions were shams or that there was ever a final determination that they were shams. That was one of multiple alternative grounds set out in the FPAW, and that does not by itself control without giving equal weight to the others. You don't have to go in and reconsider anything at the partnership level. All you're doing is construing the terms of the settlement that was entered into, construing the terms of the FPAW, and ultimately construing the regulation as to whether or not it says what we say it does. Mr. Reddy, we've given you 25 minutes. Let's hear from the government and reserve five minutes for you on rebuttal, all right? Very good. We need to hear from the other side at some point here. You do get a chance to be heard. Yes. Good morning. May it please the Court. When this Court decided Keener, it decided the dispositive jurisdictional issue that controls these cases. The taxpayers have conceded that with respect to that issue, Keener, Pratty, Deegan, and the other 53 appeals before this Court are the same. The Court denied rehearing on Bonk in Keener, and the Supreme Court denied certiorari just four months ago. This is your judicial estoppel argument. I'm sorry? You're starting with your judicial estoppel argument. Well, the concession part is there are two grounds that we believe taxpayers should be held to their concession. One is waiver in that they didn't raise the distinguishability of the cases, if they were distinguishable, below when they had a chance to do so. And two, that they're judicially estopped from taking a position on appeal that contradicts their position in the Court of Federal Claims. So, yes, that is the waiver and judicial estoppel argument. And with respect to that argument, I'd just emphasize that this is not a situation. You can't waive jurisdiction, though, can you? Well, what they've waived is their argument that these cases are different. This is an argument made before Keener was decided by this Court, right? Right. They represented to the Court of Federal Claims that they all presented the same dispositive jurisdictional issue. And then as a result of that, the Court of Federal Claims entered judgments in a larger number of cases, even than those that are now before this Court. And subsequently, the taxpayers said if the United States ultimately prevails in Keener, then the 77 judgments can be reentered. And they also said the Pratty's facts and the legal analysis in the Pratty opinion do not expand or alter the issues already before the Federal Circuit in Keener. So it's not a situation where cases are simply related. It's a situation where the taxpayers made those representations to the Court of Federal Claims, and as a result, the Court of Federal Claims treated them all alike. But the cases are alike in many respects. They are alike. The problem is, though, it seems to me at least, that what happened after those representations, it may have been every expectation on the part of the taxpayers that this Court would decide Keener in a way that would dispose of all of those cases, and perhaps it could have. But their position, as I understand it, is, well, Keener, turns out, didn't really nail down all the points. Some of the issues were resolved. Some were left unresolved, didn't nail down all the points that we believe are still viable arguments to be made in subsequent cases. And whether or not they're right about that, that seems to me to be at least a reasonable position to take in the aftermath of Keener, even though you may have expected and indeed hoped from their perspective that Keener would have resolved all the issues, preferably as they see it, in their favor. Why isn't that a perfectly reasonable position for them to have taken at the outset, and, in effect, the situation is somewhat altered by the pretty significant fact of the decision of Keener? Well, I think it actually is important that that position is not correct. Keener was not affirmed on different grounds from those that the Court of Federal Claims reached. So I think a recognition in the Court of Federal Claims that the cases all presented the same dispositive jurisdictional issues is what controls. The other point is that after the judgments were entered, the taxpayers then had an opportunity and, in fact, did say that in 17 of those judgments, the cases presented non-Pratty-related issues. And as a result, the Court of Federal Claims vacated those judgments, and none of those cases are now before this court. At that time, the taxpayers did not say to the Court of Federal Claims that the judgment that these cases now before this court presented non-Pratty-related issues. So not only did they say that the cases would be controlled by Keener, they also represented that they were the same as Pratty with respect to the dispositive jurisdictional issues. What's the detriment to the government? Because judicial estoppel requires detriment. And all that has occurred was those other cases were stayed, allowing you to conserve your litigation resources, it seems to me, and pursue Keener by itself as opposed to having to fight all the cases at once in a variety of different settings. So I'm having trouble seeing any detriment, and you have to prove detriment as one of your factors. Well, actually, in New Hampshire v. Maine, the Supreme Court case on judicial estoppel, the third requirement is either that the party would derive an unfair advantage or would impose an unfair detriment on the other party. And, in fact, harm to the government or to the other party is not an invariable prerequisite of judicial estoppel because the doctrine functions to preserve the integrity of the courts. But, I mean, in any event... Okay, well, wait, wait. There's no prejudice prong in res judicata. Why didn't you raise that? Well, TEFRA is... Oh, res judicata based on Keener? Well, it's not the same parties. I mean, the Keener taxpayers were different taxpayers. You know, they certainly are bound by the tax court decisions in the parties. Stare decisis certainly applies. Oh, absolutely. But you're saying not res judicata because stare decisis applies regardless of who you are. Res judicata requires identity of parties, or privity at least. I'm sorry. Yes, stare decisis certainly applies. Why isn't there any privity? Well, it's a different set of taxpayers. I didn't think that there was that relationship between the parties. But, I mean, Keener is certainly controlling precedent for these cases. I mean, it was the same group of partnerships and the same legal claims. I could certainly look into that if you'd like. No, that's fine. So even, you know, leaving aside the taxpayers' representations, even if the court reaches the merits of their claims in these cases, at that point you look at their claims and you see that the claims are identical to the claims that this court resolved in Keener. Let me see. I'm sorry. Are you done with that part of your argument? I sensed you were concluding. Okay. I wanted to go to the merits if we could. Let me see if I understand something basic about the way the statute of limitation operates as you view it in conjunction with 7422H. So we've got the basic statute of limitation 6501.  I'm also a partner in a partnership. And let's suppose that on the very day that my personal tax return is due, April 18, 1985, I guess it was, I file that return. Let's assume the partnership, well, it doesn't really matter when for present purposes the partnership files their return, but let's assume that many years go by. And in 2009, the IRS wakes up and says, you know what, that partnership had a real problem way back then. Let's issue an FPAA. Now, my three years have long since run. Nothing has happened in the interim. And so they go through the process. And sure enough, they get a ruling that the partnership was engaged in the sham transaction, et cetera, et cetera. And there's an assessment against me. Presumably, I can raise 6501, correct? Well, you can raise 6501. But the question as to whether the FPAA does any good depends upon when the partnership filed its return. The partnership, I should have stipulated, the partnership filed the return on the same day, April 18, 1985, which, in fact, I guess was the case in this case. Okay. Now, so many years have passed with respect to both my individual return and the partnership return. Now, A, can I raise 6501? And B, in what forum, after I've had an assessment against me, do I then have to pay the tax and can I sue for a refund predicated entirely on 6501 in the Court of Federal Claims? No, because there isn't a separate claim under Section 6501. You always have to look at the 6229 criteria. Okay. Now, where do I go to assert my 6501 rights? Well, they have to be raised in the partnership proceeding. So I would be, I would have to, well, I guess I'm already technically a partner. Well, I think Mr. Redding would disagree on this. But I may or may not be a party to the tax court proceeding, but your view is I would be a party to the tax court proceeding as soon as the tax matters partner, or the challenge partner, I guess it would be, has initiated a proceeding in the tax court, right? So I'm automatically, as a partner, I'm a party to that. All the partners are parties. Right. And your position, regardless of whether their limitations period is run or not, Mr. Redding disagrees about that, I think. But in any event, your position is they're all parties to that proceeding. Okay. Now, I have an obligation then the only place in your view that I can raise the 6501 claim would be to assert it before the tax court and get an adjudication from the tax court as to my individual situation, right? That's right. And you say that all stems from 7422H. It actually, well, it stems from 6229. It stems from the interaction of those two statutes because All 6229 says is that the government gets a little extra time. That's a defense, in a sense, by the government against the assertion of 6501, right? It's actually not a defense by the government. And we disagree that the burden of proof actually has any element to do with this. Well, okay, set aside the poor choice of words defense. That's a statutory provision that assists the government. But the question is, in other words, the 6501 may not, time may not run if, for example, the partnership never filed its return until much later, as you alluded to earlier. So all of that, those are arguments that the government may make in the context of a 6501 assertion. But the question is where, am I confined to the tax court as the only jurisdiction in which I can assert my individual 6501 rights? Even though I may plainly have a solid 6501 claim. And do I forfeit that right if I haven't gone into the tax court as a party? In the TEFRA context, yes. And that's what this court held in Keener. The reason is that because you have to look at both 6501 and 6229, you cannot evaluate whether or not the limitations period has expired without considering such things as when the partnership return was filed, whether the partnership return was valid, whether, as in this case, the tax matters partner extended the period for assessment. So that's why all of these matters have to be raised at the partnership level. And if they are not raised at the partnership level in the TEFRA context, they are waived. And your authority for the proposition that at all times, all the way back to when this matter was first in the tax court, that it was clear that the individual partners could get an adjudication of their individual rights, for example, vis-a-vis the statute of limitations. It was clear that they could proceed as parties before the tax court? Yes. I mean, in the petitions that were filed with the tax court in these cases, the partners raised the bar of the statute of limitations. And that's certainly true when you look at all of the cases that have decided that this issue is a partnership item. And I believe that four other circuits have reached the same conclusion as this court did. And you say that as to the Degans, that was decided explicitly by the tax court, at least with respect to 6229, I take it? Right. Well, it was decided when you look at the tax court's decision in a case called Agrical, which it's cited in the government's brief, that that actually was the partnership proceeding for the partnerships that were at issue in Pratty. And the tax court in that case actually made certain decisions as to whether the tax matters partner had validly extended the statute of limitations. And then you're certainly correct in the tax court decision in Degan, you see the reference to section 6229 at the end of the decision. So, yes, it actually is raised. But no reference to 6501. I mean, when you say they asserted statute of limitations, did they assert their individual 6501 rights? Well, that I don't know, but it doesn't matter, because the whole issue has to be raised at the partnership level. Well, but that's your argument, right? That's our argument. And with respect to the settling partners, I take it the Pratties at all, your position would be that they waived through the settlement? They waived any limitations argument? That's right. Okay. That's right. Isn't it possible under 6501 for, I mean, every partner, given that it triggers when they file, could have a different period of time under 6501, but yet your position is that every one of those has to be individually brought as part of this partnership proceeding and are not to be brought individually, even though every single partner has its own individual period under 6501 that may be radically different from each other? Right. Well, if you look, there's a case. Well, I guess AD Global is relevant to this, but also there's a tax court case called Rhone-Poulenc where this situation actually occurred. It was a partnership level proceeding where more than three years had elapsed since the partnership filed its return, but there was a partner's 6501 period that was still open, and the tax court in the partnership proceeding looked to see whether the FPA validly suspended the running of that partner's 6501 assessment period. So, yes, it's all considered at the partnership level, as this court held in Keener. Well, where exactly did we hold that in Keener? What this court held in Keener is that the same claim that the taxpayers raised here is a partnership item. Well, that's your position. Where in Keener did we exactly hold that 6501 individual partner statute of limitation defenses are partnership issues? What the court held in Keener is that the interaction of 6501 and 6229 is a partnership item and that the claim that the taxpayers raised in that case was a partnership item, and it's the identical claim that the taxpayers are raising in this case. The complaints are the same, I mean, except for changing the names. It's the same claim that this court already decided in Keener, and, I mean, to some extent, this is all a little bit hypothetical because you're saying that the two sections work in tandem and really can't be separated out for separate treatment. That's right. Because there's only one statute of limitations, and the other is simply a statute that provides a gloss, in effect, on the statute of limitations by saying that it's not as short as it looks under certain circumstances. Right. 6229 extends the statute of limitations in certain circumstances. It sets a minimum limit. So when one says that 6229 in Keener is a partnership issue, you're saying that they've necessarily also said that because all the 6229 is is an adjunct to 6501, they've also necessarily said that 6501 is a partnership issue. That's right. The court said that this claim is a partnership issue. I think some of the conclusions- Okay. Let me ask another quick question, which is, so I believe I'm getting all the numbers mixed up, but one of the statutes says the government has one year to file an assessment against individual partners after a 6229 decision by a court, correct? Well, it's essentially a tolling. The wording of the statute of limitations is tolling. But I'm getting the law right, right? Okay. So suppose that the government doesn't do it within a year but does it after three years, and so the taxpayer's argument is a straightforward 6501 you didn't file within a year after the tax court decision at the partnership level. You can't be suggesting that that 6501 argument would also be a partnership issue and couldn't be brought individually by a taxpayer, would you? No, I'm not suggesting that. After the partnership proceeding is over, in that kind of circumstance, that is not a partnership item. I think when the service assesses after the partnership proceeding is concluded, if we don't do it within that one-year tolling period or one year plus however much had been left on the statute before. I think this is all somewhat hypothetical because when you look at what the taxpayer's limitations claim actually is. If you do it within the one-year period, it's a partnership issue. If the tax division doesn't do it within a one year, it's not a partnership issue. Well, the question is. It seems like a strange way to decide whether 6501 is or is not a partnership issue when 62-229 and 6501 are intertwined, as the government suggests. Right. Well, I mean, at that point, the partnership proceeding is concluded. I mean, it's just a question of whether we assess that individual partner in time following the conclusion of the partnership proceeding. Well, there's no way in that situation that you could raise it in the partnership proceeding because it's over, as you say. Right. So the only place you could raise it, presumably, is in a refund action. I believe so. Yeah. But the taxpayers said below what their limitations claim is, and it actually, we don't even have to get into this necessarily because they defined their limitations claim in Pratty as whether the IRS obtained a valid and timely 62-29B extension so as to make the FPAWS timely for the purpose of suspending the 6501-62-29 assessment period. That is obviously a partnership issue. Whether the tax matters partner validly extended the statute of limitations must be raised at the partnership level, and, in fact, it was raised at the partnership level in these cases and decided. So I think to some extent, even the interactions of these statutes, it's a little academic when you look at what their limitations claim actually is. Their limitations claim clearly is a partnership item, and as I said, it's the same limitations claim that the taxpayers raised in Keener and that this Court already decided. Since you started down the line talking about academic issues, let me ask you another one that's going to sound sort of academic, but I think it ends up making a difference perhaps in the way we dispose of this case. Let's assume we agree with you on all the substantive points that you've made in your briefing today. Is it correct to say that the right disposition of this case is to affirm a dismissal for lack of jurisdiction, or is it more correct to say that the Court of Federal Claims, which after all has jurisdiction over refund actions, simply is barred from getting at the substance of the particular claims that the taxpayers are made, i.e., that those matters have either been already decided by another court, the tax court, or for the tax court and the tax court only to decide and therefore cannot be the source of a judgment in favor of the taxpayers in the Court of Federal Claims? Do you understand what I'm saying? I understand what you're saying, and 7422H, our position is that it's jurisdictional. Well, it's jurisdictional with respect to particular matters, but my question is does it mean that, and I can see the language is broad, but does it mean that the Court of Federal Claims ought to say you have failed to demonstrate a right to relief, or should the Court of Federal Claims simply say we have no jurisdiction here even though you're bringing us a refund action, which normally is what we have jurisdiction over? Right. Well, they normally have jurisdiction over refund actions, but they don't have jurisdiction over refund actions or refund actions attributable to partnership items. So we think that what the Court of Federal Claims did was correct. It said no refund jurisdiction over claims for refund attributable to partnership items. These claims are attributable to partnership items, therefore dismissed for lack of jurisdiction. Okay. So I think that that was correct. I guess to respond to some of the taxpayers' arguments on 6621C, I understand their point regarding the multiple grounds in the FBAAs. I believe that that argument is foreclosed by both Schell and by Keener, which at the end of the opinion went on to reject the same argument, although, well, essentially, I mean, Keener held that it had no jurisdiction to consider that argument at all because there is no jurisdiction over a claim for refund of tax-motivated interest. There's no jurisdiction to consider that argument, but even the Court explained that even if it had jurisdiction to consider that argument, it would not be persuaded. Now, I take it that that argument would be a pretty good argument in the Fifth Circuit, right? Well, I don't know. Are you on Weiner? I do. The court in Weiner never addressed jurisdiction. So, I mean, there is the Weiner decision that, you know, that is what the taxpayers are basing their argument on, but the Weiner Court didn't consider the jurisdictional issues. Did the tax division brief that issue to them? I don't know. I would expect so. Yeah, I personally don't know. I'm sorry. All right. But in any event, this Court has held that it is – first, it has no jurisdiction to consider that, and then even if it did, it would not be persuaded because, I mean, frankly, it doesn't make sense if a transaction is – if a partnership transaction is disallowed because it's a sham or if it's a sham transaction, the sham nature of the transaction is not negated because the transaction is also bad for other reasons. And this Court explained that, I believe, in Keener. The taxpayers' argument – Well, but their argument – I think they would characterize the FPAA allegations differently. I think they would say that those allegations, particularly to the extent that they're inconsistent, would simply be alternative possible grounds for invalidity, and that wouldn't be necessarily saying that they are all true at the same time. I mean, that's the argument on which the separability finding, as I understand it, by the Fifth Circuit was predicated. Well, the argument – under TEFRA, if an FPAA ground is not altered by a settlement or by the tax court, it's conclusive, as this Court explained in Keener. So the grounds in the FPAA are conclusive. Now, are there other courts besides ours that have reached that holding, that the FPAA, in effect, becomes a decision that becomes binding, if not successfully challenged with respect to all of the assertions in the FPAA? I'm not sure as I stand here. All right. Well, the briefs have given us probably all the cases that are pertinent to this issue, and maybe Mr. Redding will have an answer as well. But in any event, you say we've decided, and therefore that's the end of the matter. Right. Well, this Court has decided it, and I mean, I know that they take the position that they're not challenging sham, but the problem with that assertion is that – I mean, essentially what they're saying is that, well, the underpayment was not attributable to a tax-motivated transaction, but whether a transaction is tax-motivated, as this Court explained, is a partnership item, and you can't say the interest was improperly imposed without saying – So that's why that's a partnership item. Suppose that instead of doing what the – I think I know what your answer to this, but I want to make sure. Suppose that instead of doing what was done in the Deagon decision, the 2001 Judge Halpern decision, where there was a specific reference to the sham or fraudulent transaction provision of the previous version of 6621C. Suppose instead that for whatever reason the tax court had used a murky term such as this was a dubious transaction or this was a questionable transaction, and we had come then to the point of a refund action in the Court of Federal Claims. Would the Court of Federal Claims have jurisdiction at least to decide what it was that the tax court decision actually held with respect to the issue of sham? Well, on a motion to dismiss for lack of jurisdiction, the Court of Federal Claims certainly could look outside the proceedings – outside the pleadings. So I think if the Court wished to consider the tax court decision and see what the tax court decision said – Yeah, but what I'm – I'm going one step beyond that. Upon looking at it, the court says, hmm, that's really difficult to understand what the tax court did. Would that be something that the Court of Federal Claims would be entitled to do? That is to say, to determine whether the tax court had actually made a finding of sham and that the use of the term dubious was really intended to convey a finding that it was a sham transaction. I think the Court of Federal Claims could look and see – probably beyond the decision itself – look to see if the tax court decided sham. And, you know, it could probably look at documents outside of the decision itself to see if there was another finding of sham. But it could not make an independent determination as to whether the transactions were shams. And you're saying then that the taxpayer would not be relegated solely to the remedy of going back to the tax court and asking for clarification. That that's something that the taxpayer could raise before the Court of Federal Claims, the argument that, well, the tax court just didn't make the requisite finding. I think so, but, I mean, that's certainly not the case. I understand. I'm just trying to get a sense of what role you see the Court of Federal Claims is playing in this whole scheme. Pretty narrow, but not quite as narrow, perhaps, as I thought you might answer. Yeah, I think, well, I think that the Court could look to see if the tax court had decided sham. Yeah. And that in doing that, it's probably not limited to the actual decision itself. Okay. But, again, the Court of Federal Claims couldn't go beyond determining whether it had been decided in the tax court. It couldn't make any independent determination of sham, certainly. Okay. But, certainly in this case, the decision is not ambiguous at all. And, in fact, there's a First Circuit decision in a case called Nault, which actually interpreted the same tax court decisions that are at issue in these cases, and the taxpayer there had argued that the decision was ambiguous, and part of their argument also relied on the language about liabilities that the Taxpayers' Council had raised. And the First Circuit said that the decision was not ambiguous, and when the decision is not ambiguous, there's no reason to look beyond the decision in any way. Thank you, Ms. Snyder. Any final comments for us? My final comments are that the tax-motivated interest claim as well is the same claim that this court decided in Keener. So both the limitations claim and the tax-motivated interest claim have been decided by this court. Thank you, Ms. Snyder. Mr. Redding, you have more than, well, five minutes or so to go. Thank you, Your Honor. I'm going to go in reverse order a little bit on my notes. The very last discussion about whether the court did have jurisdiction or should have jurisdiction to interpret the tax court opinion is exactly what we've asked in Deegan. We have asked that the court look at that decision and decide whether that is a shame determination or not, and I do believe that the court has jurisdiction to do that and should have and not have dismissed for lack of jurisdiction. That's our whole argument on Deegan. The question about whether a partner could raise a 6501 statute of limitations defense in a TAFRA proceeding, I want to address that very quickly because the law on that changed. Prior to 1997, you were barred from doing that. In fact, the statute very clearly said if your limitations period had run, you could not be a party to the proceeding under 6226. I think it was 1997. The statute was amended to provide that you had to raise all statute of limitations defenses in the TAFRA proceeding and that a party could participate in the TAFRA proceeding to raise those defenses, even though he would then not be a party if he established that the statute had run. We are dealing with cases under the old law. The tax court could not have heard an independent 6501 limitations defense in these cases. I think if you go back and look, AD Global follows Roan Polnick. On that issue, and there's so many issues in this case that I may be crossing my wires, but I thought the government argued that, well, yeah, the statute was enacted, but it was really just confirming prior practice. It's the government's argument. What is your answer to that? It sets a very effective date. It doesn't just modify the statute. It says from this date forward. I think that has meaning in itself. Okay, but that doesn't necessarily mean that the practice had not previously been followed. It doesn't necessarily mean the practice hadn't been followed, but I would even point to, and I'd have to find it in the case, but in Roan Polnick, there was even a comment, I think it was a footnote, that said effectively we're now recognizing that 6229 is not a separate statute of limitations, and maybe we have been wrong in hearing limitations cases in the past. That kind of began, I think, the reinterpretation by the courts about what 6229 was. AD Global is the first appellate court to clearly say 6229 is not a separate statute of limitations. All it does is extend the 6501 statute. That even addresses why some of our language in our original claim goes directly to 6229, because if we had to establish that, if we had to make that argument, we'd put it forward. But I believe that as 6229 and 6501 are currently interpreted, one being basically an affirmative defense to the 6501 statute, that the claim can properly be raised in the refund forum, and then it is then up to the government to come in and show that there is some exception or extension to the 6501 statute. If the facts to support that extension have been established in the TEFRA proceeding, then 6229 may be one of those bases, but you can't go back and make new partnership-level determinations. Counsel indicated that the Deegan partnerships were part of the AgriCal decision. I believe one of the partnerships that Deegan was in may have been referenced in that decision, and one might say that the court could properly look at that decision to see whether or not there had been a prior finding in the TEFRA proceeding as to whether or not there was a valid extension, but not as to the other partnerships, because the issue was not ever determined in the tax court. I would leave that to the lower court to parse out exactly what its authority there is, but as Judge Bryson, you pointed out, I think, or alluded to, it appears that these really are determinations almost on the merits and not a jurisdictional issue. I think the tax court had jurisdiction to hear both types of our claims. I'm sorry, the Court of Federal Claims had jurisdiction to hear the nature of the claims, and if anything, would and should properly determine whether or not we are able to establish those claims without having to ask for new partnership determinations. But there's a big difference between the first part of what you said and the second part of what you said, because the first part of what you said is not much relief for you, for us to say, well, the Court of Federal Claims was correct to say that all of these issues are barred from its addressing, but it was incorrect to call the dismissal one for jurisdiction. That wouldn't give you anything. That wouldn't give me anything. But it's the second part that you're interested in. Well, actually, both. Well, you need the first one in order to get to the second. From a precedential standpoint, not for my clients, but from a precedential standpoint, I think it is important to recognize whether something is a jurisdictional issue. Yeah, it's important, but in terms of the practical impact. You're correct. We then have to go on and show why, if that is considered and the court has jurisdiction, that it give reasoned consideration to the claim and determine what can be shown to support it and what cannot. Can you give us your final thoughts, Mr. Redding? My final thoughts, Your Honor, are that this court should reverse and remand these cases in the holding that does have jurisdiction and direct further proceedings. I will make one note to the court. Should the court decide that because the statute of limitations jurisdictionally should be considered, there are eight of the cases that are on appeal that are stayed that do not have a statute of limitations claim in them that address only 6621C. So we might have to parse that at some point because those cases would stand on their own. Thank you, Mr. Redding. Thank you. All rise. Your Honor, the court is adjourned until tomorrow morning at 10 o'clock.